LESTER J. GREENWOOD, Respondent, *v.* FREDERICK SCHU-MACKER, Appellant.

(Argued September 22, 1880; decided October 5, 1880.)

THIS action was brought to recover back moneys alleged to

have been paid by plaintiff and his assignor to defendant for certain forged bonds. The plaintiff claimed that in the purchase the firm of Kohler & Co. acted as agents of the vendees, the firm of Unger & Co. and one Hertog acting as agents for defendant. The defense was that defendant was not the owner, but simply held the bonds as security for a loan, and that they were sold to plaintiff by Kohler & Co. as owners, acting on their own account, and not as agents. The principal proof relied upon by plaintiff to establish defendant's ownership and sale of the bonds was his declarations testified to by witnesses. Defendant testified that he never owned the bonds or sold them, but merely held them as security for a loan made by him to one Wolfsohn, who bought the bonds of Hertog, and that the sale to Kohler & Co. was made by Wolfsohn and Unger & Co. acted as his agents. Defendant also denied the declarations. It appeared that Kohler & Co. paid seventy-four per cent for the bonds and charged plaintiff seventy-six. Defendant asked the court to charge that even if the jury should believe that the bonds belonged to the defendant, if Kohler & Co. gave seventy-four for them and sold them for seventy-six and interest, retaining the difference as their profit, this was a sale by Kohler & Co., and plaintiff cannot recover. The court refused so to charge. *Held*, no error; that the fact referred to was evidence, but not conclusive, that Kohler & Co. bought for themselves and not as agents, and sold to plaintiff as owners, and as there was evidence of their agency, the question was one of fact; that Kohler & Co. might have charged the additional two per cent as compensation for their services, or might have taken advantage of their position as agents to reap a personal profit at the expense of their principal. Defendant also claimed that as it was proved clearly, as a fact, and without contradiction, that the bonds were not owned or sold by him, and that his sole interest was as pledgee, the effect of admissions (upon which nobody has acted to constitute an estoppel) was entirely destroyed, and that there was no question of fact for the jury. The court say as to this, " The alleged admissions * * * raise a question of fact for the jury, unless the somewhat novel theory advanced on the argument by the appellant's counsel is

sound.   He reasons that admissions (upon which nobody has acted so as to constitute an estoppel), are admissible as yielding *presumptions* against the party charged, citing as authority a remark of Wharton (2 Whart. on Ev., § 1077), and that as a presumption when verified is superseded, and, if contradicted, is destroyed, it follows in this case that the presumption of a sale by Schumacker, flowing from his admission of that fact, is entirely destroyed by the positive evidence of an ownership in Wolfsohn, and a sale by him, and so no dispute or contradiction remained.   The logical result of this doctrine might in the end reach far enough to destroy all possibility of contradicting the sworn evidence of a witness by proof that he had told a different story out of court.   The presumption from the unsworn admissions might be said to be contradicted, and therefore destroyed by the verified evidence.   The argument rests on an insecure foundation.   The very authority cited for the fundamental proposition conducts us to a knowledge of the mistake.   It explains that in a strict and scientific sense, such admissions are not so much evidence as a dispensation from evidence, that an admission is a fact to be proved by evidence, not evidence to prove a fact (id., § 1075); and that with us such admissions are competent, *either* as yielding presumptions, *or* as relieving the party offering them from mere formal proof.   (§ 1077.)   Greenleaf explains them as a substitute for the ordinary and legal proof.   (1 Greenl. Ev., § 169.)   By the scholastic jurists such admissions were spoken of sometimes as half-proofs, sometimes as presumptions; and much of refinement has attended the investigation.   It is not necessary to pursue it in that direction.   The admissions are facts, if the jury believe the evidence which shows them to have been made. That other and contradictory facts are proven only raises a question to be solved by the proper tribunal. It is the ordinary case of the collision of contradictions out of which the truth is to be found and declared by the jury, and not adjudged by the court.   This ground for a dismissal of the complaint was, therefore, properly overruled.

It appeared that before defendant made the loan upon the bonds he showed them to Kohler & Co., who were not then

plaintiff's agents, and inquired as to their genuineness; one of said firm said that the bonds were genuine, and thereupon defendant made the loan. Defendant claimed that if plaintiff bought the bonds of him through Kohler & Co. as agents, yet, as such agency was not disclosed, plaintiff was estopped by such assurances from claiming the invalidity of the bonds. *Held,* untenable.

The complaint made no charge of fraud, and there was no evidence showing any, the proof being that none of the parties knew or suspected the bonds to be forgeries until after plaintiff purchased.

The court charged the jury, among other things, as follows:

"Under the circumstances of this case you have a right, from the evidence, to say whether or not there is any thing to show you that fraud, in any shape, was being perpetrated here between these parties; that you have a right to find, from the evidence in the case, whether there is any thing showing a design, on the part of Wolfsohn and this defendant, in the manner they conducted the sale to get them upon the market and then defraud somebody. Gentlemen, take that question. That is in the case * * * if you find that there was a fraud · by which the defendant in this case was to buy the bonds, and that there was a loan in it, and thus get them upon the market, that, gentlemen, I charge you, is a question of fact, and is wholly with you. * * * If you find that this was nothing but a contrivance to get these bonds upon the market; that this man should step in himself and buy the bonds and advance the money and· put them in his own bank, and there these bonds are sold, and he takes the money ; that is about all there is in this case." To each of these propositions, submitting to the jury a question of fraud and contrivance, the defendant duly excepted. The defendant's counsel requested the court to charge: " If the defendant Schumacker did not own these bonds, but held them as collateral security for a loan he had made to Wolfsohn, and Wolfsohn by himself, or through his agent Hertog, sold the bonds, the defendant is entitled to a verdict. To this request the court answered : " I charge you that this is so, unless the evidence satisfies you that

a fraud or conspiracy was being perpetrated by the defendant Wolfsohn and Hertog in relation to a sale of the bonds. That, gentlemen, I charge you, is a question for you as well as the other questions." The counsel for the defendant then put his proposition in another form, asking the court to charge: "If the defendant Schumacker's interest in these bonds was a special interest as pledgee for a loan to Wolfsohn and the owner sold them, the defendant is entitled to a verdict." The judge answered: "Yes, if no other evidence shows to the contrary." *Held*, that the submission to the jury of an alleged fraud or contrivance or conspiracy was not justified; that the charge, therefore, was error, and was calculated to do the defendant serious injury.

The court also charged that plaintiff, if entitled to recover, could recover the price paid by him to Kohler & Co., instead of that paid by them to defendant. *Held*, error; that if plaintiff was wronged by his own agents it furnished no ground for recovering the excess of defendant.

*Ira D. Warren* for appellant.

*Hiscock, Gifford & Doheny* for respondent.

Finch, J., reads for reversal.

All concur; except Danforth, J., having been of counsel, taking no part.

Judgment reversed.